UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

FRANCISCO FERNANDEZ,

                    Plaintiff,

          -v-                                                    06-CV-0506(Sr)

CORRECTIONS OFFICER J. CALLENS,
et al.,

                    Defendants,

_____

## DECISION AND ORDER

          Pursuant to 28 U.S.C. § 636(c), the parties have consented to the

assignment of this case to the undersigned to conduct all proceedings in this case,

including the entry of final judgment (Dkt. #21).

## PRELIMINARY STATEMENT

          Currently before the Court is the defendants' motion for summary

judgment (Dkt. #31).

          Plaintiff commenced this *pro se* action on or about July 27, 2006 pursuant

to 42 U.S.C. § 1983 (Dkt. # 1). Plaintiff's amended complaint alleges various violations

of the Eighth and Fourteenth Amendments  to the United States Constitution (Dkt. #6).

At all times relevant to the allegations in plaintiff's complaint, plaintiff was incarcerated at

Wende Correctional Facility ("Wende"). Defendants were all employees of the New York

State Department of Correctional Services ("DOCS"). Defendant Correctional Officers

James Callens ("Callens") and Christopher Czarnecki, ("Czarnecki"), Sergeant Scott

Lambert ("Lambert"), Hearing Officer Thomas Schoellkopf ("Schoellkopf"), Dr.

Jacqueline Levitt ("Levitt"), and Robert Stachowski, R.N. ("Stachowski"), were assigned to Wende. Defendant Donald Selsky ("Selsky"), Director of Special Housing/Inmate Disciplinary Programs, was assigned to DOCS office in Albany, New York.

Plaintiff has asserted four causes of action, sub-divided into the following claims: (1) Correctional Officers Callens and Czarnecki assaulted plaintiff without provocation in violation of the Eighth Amendment; (2) Callens and Czarnecki deprived petitioner of his due process rights when they denied plaintiff recreation and withheld his property; (3) Sergeant Lambert failed to supervise Callens and Czarnecki; (4) Dr. Levitt and R.N. Stachowski failed to provide plaintiff with adequate and appropriate medical treatment in violation of the Eighth Amendment; (5) Schoellkopf violated plaintiff's due process rights at a disciplinary hearing; and (6) Selsky violated plaintiff's due process rights by refusing to reverse the disciplinary hearing disposition. Plaintiff seeks compensatory and punitive damages. Dkt. #6, ¶ 56-62.

Since filing his opposition to the instant motion for summary judgment (Dkt. ##46-48), the plaintiff has been deported from the United States to the Dominican Republic.

For the reasons that follow, defendants' motion for summary judgment is granted in part, and denied in part.

## FACTS

The following facts are undisputed unless otherwise noted.

### A. Plaintiff's arrival at Wende; Incident of August 9, 2004

On August 2, 2004, plaintiff arrived at Wende from Upstate Correctional Facility ("Upstate"). He was in keep-lock status from August 2 through August 8. Dkt.

#32, ¶¶ 44-45.  During that time, plaintiff did not receive his personal property from Upstate. *Id.* at ¶ 46. On August 12, 2004, plaintiff filed a grievance requesting the return of his personal property. The grievance was reviewed by the Inmate Grievance Review Committee ("IGRC"), which informed plaintiff that his property arrived and was reviewed and processed on August 14, and was  issued to him that same day. Plaintiff appealed the response of the IGRC to the Superintendent, who affirmed the response on August 27, 2004. Plaintiff then appealed the decision of the Superintendent to the Central Office Review Committee ("CORC"), alleging that he was called out to receive his property on August 7, 2004, but that his property was intentionally withheld from him. The CORC observed that there was no record of plaintiff being called out to receive his property on August 7, and that his property did not arrive until August 14, 2004. *Id.* at ¶ 47-48.

On August 9, 2004, Correctional Officer Callens  received information that an inmate in 11 Company, Cell 2, may be in possession of a weapon. Dkt. #32, ¶ 9. After receiving authorization to search plaintiff's cell, Callens ordered plaintiff out of his cell.  According to defendants, as plaintiff exited the cell, he raised his fist at Callens, who then grabbed plaintiff's right arm while Czarnecki assisted in restraining plaintiff. *Id.* at ¶ 10-12.  Plaintiff has disputed this fact, alleging that he was assaulted by the two officers without provocation.  Dkt. #48, ¶¶ 13, 15. The two Correctional Officers then placed plaintiff's hands behind his back and escorted him to the second floor lobby. Dkt. #32, ¶¶ 10-13. Sergeant Lambert heard the commotion and responded to the second-floor lobby. Callens explained the situation, and Lambert placed mechanical restraints on the plaintiff. *Id.* at ¶ 14.

Arrangements were then made for the plaintiff to be moved to the Special

Housing Unit ("SHU") at Wende. *Id.* at ¶ 8. Plaintiff did not attend recreation the day of the incident. *Id.* at ¶¶ 49-50.

Callens returned to plaintiff's cell and, in searching it, he recovered a plastic, sharpened object concealed in a cardboard sheath. The object was taken to Lambert, who placed it in the Captain's Evidence Locker. *Id.* at ¶ 21. Plaintiff was thereafter charged with violating DOCS Rule 100.11 (Assault on Staff) and Rule 113.10 (Weapon Possession) and a Misbehavior Report was issued by Callens. *Id.* at ¶ 22. As a result of the August 9, 2004 incident, plaintiff was moved to SHU. *Id.* at ¶ 8.

**B.    Medical Treatment**

Shortly after the incident of August 9, 2004, plaintiff was examined by R.N. Robert Stachowski. Plaintiff complained of pain to his nose, left shoulder, and left wrist. Stachowski observed a small avulsion to the nose, approximately three millimeters in length, and documented the results of his exam on a Use of Force Report and Inmate Injury Report, in accordance with DOCS procedure. He determinated that there was no evidence of any additional injury and that plaintiff did not require further medical treatment. *Id.* at ¶¶ 9, 16-17; Dkt. #35, Ex. B-C.

On August 11, 2004 Dr. Jacqueline Levitt examined plaintiff after he complained of pain to his left wrist and nose. Levitt observed a small bruise on the bridge of plaintiff's nose with no deformities, and no deformity to his wrist. In her medical judgment, Dr. Levitt determined that plaintiff had suffered a soft tissue injury and that no further treatment was needed at that time. Dkt. #32, ¶ 54. On August 18, 2004, plaintiff complained of pain in his left wrist and left shoulder, and decreased flexion of the fifth digit on his left hand. Levitt's examination revealed that his wrist showed no swelling and

had a normal range of motion. Plaintiff also had a normal grip. She did observe some decreased flexion of his left fifth digit, and normal range of motion of his left shoulder. Levitt determined that no treatment was needed for those injuries at that time. *Id.* at ¶ 56. One week later, plaintiff again complained of pain in his left wrist and shoulder and requested x-rays. Levitt saw no deformities to his shoulder, wrist, or left fifth digit and determined that there was no bony injury and thus no need for x-rays at that time. Her assessment had not changed when she saw plaintiff again on September 1, 2004. *Id.* at ¶ 59-60. On September 8, 2004, plaintiff again complained of wrist and shoulder pain and decreased range of motion of his fifth left digit. Dr. Levitt examined plaintiff and observed decreased flexion but no deformity in the fifth left digit. She determined that the decreased flexion of plaintiff's finger was not clinically significant. *Id.* at ¶ 62.

On September 15, plaintiff was examined by another physician following complaints of poor flexion of the left fifth finger. That doctor noted that plaintiff had persisting left upper extremity complaints and ordered an x-ray of his left finger, and indicated that he would follow-up with an orthopedic consultation if necessary. Dr. Levitt agreed with that plan of care. *Id.* at ¶ 64.

Plaintiff was transferred out of Wende on September 23, 2004. *Id.* at ¶ 68. Upon his transfer to Upstate Correctional Facility, plaintiff was examined by a physician and it was determined that his left fifth digit had full range of motion and no treatment was needed. The finger was again examined at Upstate on October 18, 2004. The nurse noticed decreased flexion, but that it did not warrant any treatment. *Id.* at ¶¶ 69-70. Finally, an orthopedist consulted with plaintiff on May 26, 2005, and concluded that there was decreased flexion of plaintiff's left fifth digit but that there was no "long term

5

problem." *Id.* at ¶ 71. Due to plaintiff's chronic complaints of pain in his shoulder and ulnar and failed conservative treatment, a diagnostic study of his left shoulder was completed at Clinton Correctional facility. An MRI did not reveal any injuries, therefore an arthoscopic surgery was required to diagnose and treat the affected shoulder. That surgery was performed on December 21, 2006. *Id.* at ¶ 73.

### C. Misbehavior Report and Disciplinary Hearing

In preparation for the Tier III Superintendent's Hearing arising from the Misbehavior Report dated August 9, 2004, plaintiff was assigned an employee assistant pursuant to 7 N.Y.C.R.R. § 251.4. *Id.* at ¶ 23. Plaintiff requested that seven inmates be interviewed as potential witnesses. The employee assistant was unable to locate one of the witnesses, three refused to testify, and two were denied as witnesses by Hearing Officer Schoellkopf. The remaining witness agreed to testify at the hearing. *Id.* at ¶ 24. The hearing was then conducted before Shoellkopf on August 11, 2004. *Id.* at ¶ 25.

At the commencement of the hearing, plaintiff complained that his employee assistance was inadequate, and requested additional witnesses. He also requested that another Hearing Officer complete the hearing. *Id.* at ¶ 26. Schoellkopf adjourned the hearing and proceeded to locate and interview four witnesses based on the plaintiff's requests. That testimony was recorded and played for the plaintiff at the SHU hearing room on August 31, 2004. *Id.* at ¶ 27-28. Testimony was also given by Correctional Officers Callens and Sergeant Lambert. Schoellkopf denied plaintiff's requests for additional witnesses, determining that further testimony would be redundant pursuant to 7 N.Y.C.R.R. § 253.5. *Id.* Plaintiff objected to the proceedings, claiming that he did not have the opportunity to question witnesses and did not receive certain

documentary evidence. He also claimed that he was denied the right to a fair and impartial hearing officer. *Id.* at ¶ 29.

After hearing and considering the evidence, Schoellkopf found plaintiff guilty of assault on staff and weapons possession and sentenced him to one year in SHU, and one year loss of packages, commissary, phone, personal television, and good time. *Id.* at ¶ 31. Plaintiff appealed the hearing disposition to the Commissioner of DOCS. Upon review, Donald Selsky, Director of Special Housing/Inmate Disciplinary Programs, affirmed the hearing disposition on November 18, 2004. *Id.* at ¶ 35. Plaintiff then brought a proceeding pursuant to N.Y. C.P.L.R. Article 78 to review the Commissioner's determination. The Appellate Division, Third Department, dismissed the weapon possession charge for insufficient evidence and directed that all references thereto be expunged from plaintiff's record. *Id.* at ¶ 37; *see Fernandez v. Goord*, 27 A.D.3d 806 (3rd Dept. 2006). The Appellate Division further determined that plaintiff was afforded meaningful assistance from his employee assistant and that there was no merit to the assertions that Hearing Officer Schoellkopf was biased and improperly denied plaintiff the right to call witnesses. *Id.*

In accordance with the Appellate Division's determination, Director Selsky modified the hearing disposition by removing the guilty finding pertaining to the weapon possession charge.[1] Dkt. #32, ¶ 40.

**D.      Grievance Relating to the August 9, 2004 Incident**

On August 12, 2004, plaintiff filed a grievance alleging that Callens slammed plaintiff's face and body into a wall and hit his left shoulder with a baton. He

---

[1] Plaintiff also received a reduction in his other sanctions to 330 days to SHU and 330 days loss of packages, phone, and personal television. *See* Dkt. #32 at ¶ 40.

further alleged that Czarnecki and Callens spun him around and again slammed him into a wall. *Id.* at ¶ 41. Following an investigation, the Superintendent concluded that the use of force was consistent with the manner prescribed by DOCS rules. Plaintiff's grievance was denied, and an appeal was taken to CORC , which unanimously upheld the determination of the Superintendent denying the grievance, observing that the medical records and documentation of the Use of Force Report did not substantiate plaintiff's allegation that he was struck with a baton. *Id.* at ¶¶ 42-43.

## DISCUSSION AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff." *Thomas v. Irvin*, 981 F.Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982. A party seeking to defeat a motion for summary judgment must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995).

Pursuant to Fed.R.Civ.P. 56(e), affidavits in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, affidavits "must be admissible themselves or must contain evidence that will be presented in an admissible form at trial." *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991) (hearsay testimony that would not be admissible if testified to at trial may not properly be set forth in an affidavit).

B.    **Plaintiff's Claims**

1.    **First Cause of Action: Excessive Force**

a.    **Defendants Callens and Czarnecki**

Plaintiff first claims that Correctional Officers Callens and Czarnecki used excessive force against him in violation of the Eighth Amendment prohibition against

cruel and unusual punishment. Dkt. #6, ¶ 56.

A claim of cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution has both a subjective and objective component. To satisfy the subjective component, a plaintiff must demonstrate that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the circumstances surrounding the challenged conduct." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999); *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)). Whether conduct of prison officials can be characterized by "wantonness" is determined by "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wright*, 554 F.3d at 268 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The objective component of a claim of cruel and unusual punishment concentrates on the harm done in light of "contemporary standards of decency." *Wright*, 554 F.3d at 268 (quoting *Hudson*, 503 U.S. at 8).

"Where a prisoners' allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that Correctional Officers used force maliciously and sadistically, our Court has reversed summary dismissals of Eighth Amendment claims of excessive force even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak." *Wright*, 554 F.3d at 269 (citing *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) ("reversing summary dismissal of prisoner's complaint, though suggesting that prisoner's evidence of an Eighth Amendment violation was 'thin' as to his claim that a Correctional Officer struck him in the head, neck, shoulder, wrist, abdomen, and groin, where the 'medical records after

the ... incident with [that officer] indicated only a slight injury'"); *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) ( "vacating district court's sua sponte dismissal of prisoner's complaint, though characterizing his 'excessive force claim [a]s weak and his evidence [as] extremely thin' where prisoner alleged that he was hit by prison guards 'after he was handcuffed' but 'the only injuries he suffered were a bruised shin and swelling over his left knee'")). Notwithstanding the foregoing, "de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind," is not proscribed by the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson*, 503 U.S. at 10. Indeed, the Supreme Court has further elaborated, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id.* at 9.

Plaintiff has alleged that Callens and Czarnecki assaulted him without provocation, causing injury to his nose, pinky finger, wrist, arm, shoulder, and back. Dkt. #6, ¶¶ 24-28, 42, 56. Defendants contend that "plaintiff came out of his cell with a clenched fist, and he attempted to strike [ ] Callens." According to defendants, the Correctional Officers then applied a reasonable use of force to protect themselves and others. Dkt. #33, pp. 24-25. Plaintiff's "Answer to Defendants' Statement of Undisputed Facts" states that plaintiff's attempt to strike Officer Callens "never happened" and therefore the defendants' use of force was not justified. Dkt. #48, ¶ 13. He also maintained this position during his disciplinary hearing. Dkt. # 46, Ex. 3 at 38. The parties thus dispute whether the Correctional Officers had a "wanton" state of mind and whether the degree of force involved under the circumstances was reasonable.

As noted below[2], plaintiff has not adduced any evidence demonstrating that his alleged injuries were serious. However, it is disputed whether "force was applied in a good faith effort to maintain or restore discipline . . . ." *Hudson*, 503 U.S. at 6-7. Hence, a material fact is in dispute as to the subjective component of plaintiff's excessive force claim. *See Griffen*, 193 F.3d at 91 ("Although [prisoner] appellant's excessive force claim is weak and his evidence extremely thin, dismissal of the excessive force claim was inappropriate because there are genuine issues of material fact concerning what transpired ...."); *Ali v. Szabo*, 81 F.Supp.2d 447, 458 (S.D.N.Y. 2000) ("[B]ecause there is a material issue of fact as to whether any force was needed, the Court cannot determine whether the force allegedly used ... reasonably correlates to the need for the application of force."); *Johnson v. Doherty*, 713 F.Supp. 69, 72 (S.D.N.Y. 1989) (summary judgment on an excessive force claim is inappropriate where there are disputed facts as to the context in which the incident occurred and the signs of provocation).

Accordingly, defendants' motion for summary judgment with respect to plaintiff's excessive force claim is denied.

### b.    Supervisory Liability

Plaintiff also contends that Sgt. Lambert failed to properly supervise Callens and Czarnecki with regard to the alleged assault against plaintiff. Dkt. #6, ¶ 57.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937,

---

[2] See discussion at B.2.

1948 (May 18, 2009). Thus, it is well settled that the personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Al- Jundi v. Estate of Rockefeller*, 885 F.2d 1060,1065 (2d Cir. 1989). Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created or permitted the continuation of a policy or custom under which unconstitutional practices occurred; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring. *Colon*, 58 F.3d at 873.[3]

Plaintiff has not alleged that Lambert participated in any of the alleged conduct of Callens or Czarnecki, or that he created a policy or custom that effectively sanctioned their conduct. His allegation that Lambert was made aware of the complained of conduct but did nothing to remedy or protect could implicate categories two (2), four (4) or five (5) under *Colon*. However, plaintiff presents no evidence that Lambert failed to remedy a wrong after being informed through a report or appeal or failed to act on information indicating that unconstitutional acts were occurring. Rather,

---

[3] At least one district court in this Circuit has opined that the holding in *Iqbal* substantially limited the *Colon* categories. *See Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third *Colon* categories pass *Iqbal*'s muster .... The other *Colon* categories impose the exact types of supervisory liability that *Iqbal* eliminated."); *but see D'Olimpio v. Crisafi*, Nos. 09 Civ. 7283, 09 Civ. 9952, --- F.Supp.2d ----, 2010 WL 2428128, at *4-*5 (S.D.N.Y. June 15, 2010) ("[T]he five *Colon* categories for personal liability of supervisors may still apply as long as they are consistent with the requirements applicable to the particular constitutional provision alleged to have been violated."). Even when examined under the broader *Colon* approach, plaintiff cannot establish the personal involvement of Lambert.

the only evidence plaintiff proffers is that he vaguely testified at his disciplinary hearing that he had informed Lambert about the alleged assault while in Lambert's office, and Lambert reacted by ordering plaintiff to SHU. Dkt. # 46, Ex. 3 at 41. Such conclusory allegations are clearly insufficient to create a question of fact regarding Lambert's personal involvement with the alleged actions of his co-defendants. Further, plaintiff has presented no evidence concerning Lambert's management or training of any of the co-defendants. Hence, there is no evidence from which a factfinder could evaluate or construe gross negligence. In sum, plaintiff has not established Lambert's personal involvement in a constitutional violation.

With respect to plaintiff's first cause of action, defendants' motion for summary judgment is granted, except as to plaintiff's excessive force claim against Callens and Czarnecki.

### 2. Second Cause of Action: Deliberate Indifference

Plaintiff next contends that R.N. Stachowski and Dr. Levitt failed to provide adequate treatment to plaintiff, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Dkt. #6, ¶ 58.

The Eighth Amendment not only prohibits "physicially barbarous punishments," but also "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ' against which we must evaluate penal measures." *Estelle v. Gamble,* 429 U.S. 97,102 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)). "These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Id.* at 103. The *Estelle* court concluded that an unconstitutional denial of medical care occurs

when there is a "deliberate indifference to serious medical needs of prisoners." *Id.* at 104. The deliberate indifference standard "incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citations and internal quotations omitted).

With respect to the objective component, the alleged deprivation must be "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998). A serious medical condition exists where the "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance v. Armstrong*, 143 F.3d 698, 701-02 (2d Cir.1998).

After the August 9, 2004 incident, plaintiff complained of pain to his nose, left shoulder, and left wrist. Stachowski examined plaintiff and noted that the only apparent injury to plaintiff was a small avulsion to his nose, approximately 3 millimeters in length. Dkt. #32, ¶ 17. Dr. Levitt then examined plaintiff when he complained of pain to his left wrist and nose. She observed a small bruise on the bridge of his nose with no deformities and no deformity to his wrist. In her medical judgment, Levitt determined that plaintiff had suffered a soft-tissue injury and that no further treatment was needed at that time. Dkt. #32, ¶ 54. These types of injuries cannot be said to be "sufficiently serious", nor are they a condition of urgency, one that may produce death, degeneration, or extreme pain. *See, e.g.*, *Davidson v. Scully*, 914 F.Supp. 1011, 1015-16 (S.D.N.Y.

1996) (holding that a plaintiff's "allergy condition, his podiatric condition, his post-surgery hernia condition, his knee condition, his urological problems, his dermatological problems, and his cardiological problems do not present urgent medical conditions the maltreatment of which amounts to cruel and unusual punishment in violation of the Eighth Amendment."); *Pabon v. Goord*, No. 99 Civ. 5869(THK), 2003 WL 1787268, *4 (S.D.N.Y. March 28, 2003) (clival lesion at the base of the inmate's skull not sufficiently serious); *Rodriguez v. Mercado*, No. 00 CIV. 8588 JSRFM, 2002 WL 1997885, *8 (S.D.N.Y. Aug. 28, 2002) (bruises to head, back, and wrists not sufficiently serious); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F.Supp.2d 303, 311 (S.D.N.Y.2001) (bleeding finger not a severe injury); *Henderson v. Doe*, No. 98 Civ. 5011, 1999 WL 378333, *2 (S.D.N.Y. June 10, 1999) (broken finger not severe).

Even if plaintiff had demonstrated injuries severe enough to rise to the level of a serious medical need, he still has not raised a material issue of fact that named medical professionals at Wende were deliberately indifferent to that need.

To satisfy the subjective element of the deliberate indifference standard, an inmate must demonstrate that the prison official's conduct was more than negligent, but he need not show that it was "undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Rather, it must be established that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Stated another way, "[a] showing of medical malpractice is therefore insufficient to support an Eighth Amendment

claim." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).

Plaintiff encountered defendant Stachowski immediately following the incident on August 9, 2004. Stachowski examined plaintiff, and, in his medical judgment, determined that plaintiff did not require medical treatment at that time. Dkt. #32, ¶ 17. An issue of medical judgment is "precisely the sort of issue that cannot form the basis of a deliberate indifference claim." *Hernandez*, 341 F.3d at 147. Following Stachowski's initial examination, medical staff saw the plaintiff a total of seventeen times from the date of the incident to September 23, 2004 when he was transferred out of Wende. Dkt. #32, ¶ 72. During the exams at Wende, plaintiff complained of pain to his left wrist, shoulder, and pinky finger seven times. Plaintiff contends that Levitt provided inadequate medical treatment because she did not order x-rays or order a specialist consultation, *see* Dkt. #6, ¶¶ 40-41. However "[t]he failure to perform an X-ray or to use additional diagnostic techniques does not constitute cruel and unusual punishment but is, at most, medical malpractice cognizable in the state courts." *Estelle*, 429 U.S. at 107; *see also Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) (The fact that a plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation); *see also Sonds,* 151 F.Supp.2d at 312 (holding that disagreements over medications, diagnostic techniques (e.g., the need for x-rays), forms of treatment or the need for specialists are not adequate grounds for a § 1983 claim).

Furthermore, in the brief period of time that plaintiff was in defendant Levitt's care, both defendants concluded that plaintiff did not warrant extensive radiological studies and/or orthopedic consultation. Dkt. #32, ¶ 75. Both Stachowski and

Levitt examined plaintiff and made their own independent medical judgments to determine the best course of treatment for him. Plaintiff has not presented any evidence to raise a material issue of fact of negligence, much less deliberate indifference.  On this basis, plaintiff's claims are dismissed and the defendants' summary judgment motion  is granted on the second cause of action.

### 3.        Third Cause of Action: Due Process--Disciplinary Proceedings

#### a.        Inadequate Assistance

Plaintiff contends that he was denied his right to employee assistance at his Tier III disciplinary hearing. Dkt. #6, ¶¶ 46, 59.[4]

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court recognized that prisoners retain a liberty interest and may not be deprived of that interest without due process of law. 418 U.S. at 556. Thus, an inmate facing disciplinary charges that could result in punitive segregation is entitled, at a minimum, to receive advance written notice of the charges against him and of the evidence available to the factfinder. *Id.* at 563-64. The purpose of this notice is to give the inmate an opportunity to marshal the facts and prepare his defense. *Id.* at 564. Due process further requires that a written record of the proceedings be kept, along with a written statement by the factfinder as to the evidence relied upon and reasons for the disciplinary action imposed. *Id.*; *see also Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985). In addition, the inmate is entitled to call witnesses and present documentary evidence in his defense "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566; see also *McCann v. Coughlin*, 698 F.2d

---

[4] The Court notes that plaintiff has not sued the employee assistant. In any event, the record belies plaintiff's complaint that he was denied meaningful assistance.

112, 122 (2d Cir.1983).

The Second Circuit has elaborated on the minimum due process requirements set forth in *Wolff* that pertain to an inmate facing disciplinary charges. In *Eng v. Coughlin*, 858 F.2d 889 (2d Cir. 1988), for instance, the Second Circuit held that "prison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." 858 F.2d at 897. In *McCann v. Coughlin*, 698 F.2d 112 (2d Cir. 1983), the Second Circuit recognized that the factfinder presiding over the disciplinary hearing must be fair and impartial. 698 F.2d at 122 (citing *Crooks v. Warne*, 516 F.2d 837 (2d Cir.1975)).

New York's regulations entitle a prisoner to an employee assistant to help him prepare for a disciplinary hearing. *See* 7 N.Y.C.R.R. §§ 251-4.1, 251-4.2. The Supreme Court has held that a prisoner's right to assistance as a matter of federal constitutional law is more limited, determining that the institutional concerns implicated in prison administration would not be furthered by entitling inmates to legal counsel in the form of a retained or assigned attorney. *See Wolff*, 418 U.S. at 570  ("The insertion of counsel into the disciplinary process would inevitably give the proceedings a more adversary cast and tend to reduce their utility as a means to further correctional goals. There would also be delay and very practical problems in providing counsel in sufficient numbers at the time and place where hearings are to be held. At this stage of the development of these procedures we are not prepared to hold that inmates have a right to either retained or appointed counsel in disciplinary proceedings."); *accord Silva v. Casey*, 992 F.2d 20, 21 (2d Cir.1993).

It is undisputed that plaintiff was assigned an employee assistant pursuant to 7 N.Y.C.R.R. § 251-4.1. Dkt. #32, ¶ 23. Plaintiff contends, however, that the employee assistant assigned to him failed to interview witnesses and supply him with documents to assist in his defense. The record before the Court indicates that after meeting with the assistant, plaintiff requested that seven inmates be interviewed as potential witnesses. The assistant was unable to locate one of the requested witnesses, three refused to testify, and two were rejected by the hearing officer. *Id.* at ¶ 24; Dkt. #39, Ex. B-C. Moreover, the Assistant Form indicates that several documents were issued to plaintiff upon his request. Dkt. #39, Ex. B. When given the chance at the disciplinary hearing to elaborate on his claim that his assistance was "incomplete," plaintiff was unable to identify the documents that he claimed to be entitled to but did not receive. He also re-stated his assertion that his assistant failed to interview potential inmate witnesses. Dkt. #46, Ex. 3 at 7; Dkt. #39, Ex. D. Hearing Officer Schoellkopf informed plaintiff that certain requested documents were not available for "security reasons" and that plaintiff would be able to request witnesses at the hearing. *Id.* at 7-11.

Under *Eng*, an assigned assistant who does nothing to assist an inmate "has failed to accord the prisoner his limited constitutional due process right of assistance." *Eng*, 858 F.2d at 898. Such is not the case here. The employee assistant did reach out to each of the requested witnesses, and thus did not fall short of the required level of employee assistance. *See Jermosen v. Coughlin*, No. 89 CV 1140, 1993 WL 328482, at *4 (W.D.N.Y. Aug. 9, 1993), *aff'd*, 29 F.3d 620 (1994) (where an employee assistant interviewed witnesses and reported to the inmate, nothing else was required of the assistant). Accordingly plaintiff's claim of inadequate employee

assistance does not rise to a due process violation.

### b. Denial of Request for Witnesses

Plaintiff next avers that Hearing Officer Schoellkopf denied him of his right to call witnesses on his behalf and confront witnesses against him at his disciplinary hearing. Dkt. #6, ¶ 46.

Although a New York inmate has a due process right to call witnesses, *see* 7 N.Y.C.R.R. § 254.5(b), that right is not absolute. *See Ponte v. Real,* 471 U.S. 491, 495 (1985); *Wolff*, 418 U.S. at 566. (1974). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority...." *Ponte*, 471 U.S. at 496 (quoting *Wolff*, 418 U.S. at 566). A hearing officer may also refuse to call a witness "on the basis of irrelevance or lack of necessity." *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir.1991); *see also Scott v. Kelly*, 962 F.2d 145, 146-47 (2d Cir.1992) ("It is well settled that an official may refuse to call witnesses as long as the refusal is justifiable"). To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing. *See Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir.1991).

In the case at bar, Hearing Officer Schoellkopf adjourned the hearing so the plaintiff's requested witnesses could be located and interviewed. Ultimately, only four inmates agreed to testify. That testimony was recorded and played for the plaintiff when

the hearing resumed on August 31, 2004. Dkt. #32, ¶ 28.[5] Testimony was also given by

Sergeant Lambert and Correctional Officer Callens. Following their testimony,

Schoellkopf determined that any further testimony would be redundant, and denied

plaintiff's requests for "all staff" to testify pursuant to 7 N.Y.C.R.R. § 253.5(a)[6]. *Id.*

The record indicates that Schoellkopf did not deny plaintiff the opportunity

to call witnesses on his behalf. He did, however, deny plaintiff's request that two

additional officers testify on the grounds that plaintiff could not call an unlimited number

of witnesses and because any further testimony would be redundant. A hearing officer in

a prison disciplinary proceeding does not violate due process by excluding irrelevant or

unnecessary testimony. *Kalwasinski v. Morse*, 201 F.3d 103,109 (2d Cir.1999). Rather,

all that is required to satisfy due process is that the hearing officer prove he had a

rational basis for denying the witnesses. *Fox v. Coughlin*, 893 F.2d 475, 478 (2d

Cir.1990). Here, plaintiff had six witnesses at his disciplinary hearing, four inmates and

two Correctional Officers. In light of the testimony already given, Schoellkopf refused to

interview the additional Correctional Officer because he believed such testimony would

be redundant. The denial was thus not a violation of plaintiff's right to due process. *See*

*Afrika v. Selsky*, 750 F.Supp. 595, 600-601 (S.D.N.Y. 1990) (refusal to call some

witnesses whose testimony was not believed to be relevant, after hearing testimony of

---

[5] Plaintiff was being held in the SHU, and the hearing was conducted there. The inmates that plaintiff had sought to testify were located in the general population. The hearing officer thus recorded the inmates' testimony in the general population hearing room, to be played for plaintiff once the hearing was resumed in the SHU hearing room. *See* Dkt. #32, ¶ 27; *see* 7 N.Y.C.R.R. § 253.5(b).

[6] 7 N.Y.C.R.R. § 253.5(a) reads, "[t]he inmate may call witnesses on his behalf provided their testimony is material, is not redundant, and doing so does not jeopardize institutional safety or correctional goals. If permission to call a witness is denied, the hearing officer shall give the inmate a written statement stating the reasons for the denial, including the specific threat to institutional safety or correctional goals presented."

several requested eyewitnesses, did not violate due process); *see generally Russell v. Selsky*, 35 F.3d 55, 59 (2d Cir.1994) (a prison disciplinary hearing officer may refuse to allow willing witnesses to testify where their testimony would be cumulative).

Finally, it is well settled that "[a]n inmate does not possess a constitutional right to confront or cross-examine witnesses in prison disciplinary hearings. *Wolff*, 418 U.S. at 567-68; *Kalwasinski*, 201 F.3d at 109. *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir.1993). To that end, plaintiff's complaint that the inmate testimony was taken outside of his presence and tape-recorded does not pose a due process violation. In any event, Schoelkopf did give plaintiff the opportunity to present questions to the inmate-witnesses, but plaintiff did not provide any.  Dkt. # 46, Ex. 3  at 19-20. Plaintiff has thus not established a due process violation.

### c.     Denial of Fair Hearing

Plaintiff alleges that Hearing Officer Schoellkopf was not fair and impartial, thereby depriving him of due process. Dkt. #6, ¶ 46. Specifically, plaintiff complains that Schoellkopf pre-judged the case against plaintiff. Dkt. #46  at 11-12, 15.

"An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir.1996); *see Wolff*, 418 U.S. at 570-71; *Russell v. Selsky*, 35 F.3d 55, 59 (2d Cir.1994). An impartial hearing officer "is one who, *inter alia*, does not prejudge the evidence and who cannot say ... how he would assess evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 569-70 (2d Cir. 1990); *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989) ("it would be improper for prison officials to decide the disposition of a case before it was heard").

It is well recognized, however, "that prison disciplinary hearing officers are

not held to the same standard of neutrality as adjudicators in other contexts." *Allen*, 100

F.3d at 259. For example, "[t]he degree of impartiality required of prison officials does

not rise to the level of that required of judges generally." *Allen*, 100 F.3d at 259; *see*

*Francis*, 891 F.2d at 46. A hearing officer may satisfy the standard of impartiality if there

is "some evidence in the record" to support the findings of the hearing. *Superintendent*

*v. Hill,* 472 U.S. 445, 455 (1985). The Second Circuit has explained that, "[a]lthough the

Court in *Hill* stated that the question is whether there is 'any evidence' that 'could'

support the disciplinary decision, this Court has not construed the phrase 'any evidence'

literally. Rather, we have looked to see whether there was 'reliable evidence' of the

inmate's guilt." *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004) (quoting *Hill*, 472 U.S. at

455-56).

   Plaintiff's argument that defendant Schoellkopf had pre-determined

plaintiff's guilt is belied by the evidence in the record before this Court. The disciplinary

hearing spanned several days to allow for each of plaintiff's witnesses to be interviewed

and testify. In addition to the plaintiff's four witnesses, two Correctional Officers also

provided testimony in front of plaintiff, who was permitted to question them. As reflected

in the disciplinary hearing transcript, defendant Schoellkopf permitted plaintiff to voice

his objections during the hearing, afforded plaintiff the opportunity to testify or to present

evidence in his defense. Moreover, Schoellkopf set forth sufficient evidence in his

disposition to support his determination of guilt of assault on staff and weapon

possession, stating that he relied on the testimony of Officer Callens, who was

personally involved in the altercation and completed a Misbehavior Report dated August

9, 2004; the Unusual Incident Report; the weapon recovery Unusual Incident data sheet;

a "to/from memo" of Sgt. Lambert as well as his testimony; a Use of Force Report; the Watch Commander's log; the Captain's log; and the chain of custody log entry. Dkt. #46, Ex. 3 at 45. After finding plaintiff guilty, Schoellkopf imposed the following penalty: one year SHU, one year loss of package, commissary and phone, one year loss of TV, and one year loss of good time. The hearing officer noted, "[t]he reasons for disposition is because of the serious nature of attempting to strike an officer as well as this being your second 113.10  weapon violation. The last two dispositions haven't deterred you, therefore this stronger disposition is given to emphasize to you and others to refrain from this behavior in the future." *Id*. at 46.

Plaintiff's bare allegations of bias and prejudgment, without more, are insufficient to defeat defendant's motion for summary judgment. As reflected in the hearing transcript, defendant Schoellkopf based his determination on the Misbehavior Report, the testimony of plaintiff, testimony of witnesses present during the incident, and the documentary evidence. Thus, the record before this Court establishes that defendant Schoellkopf  was neither biased nor prejudged the evidence. To the contrary, Schoellkopf  based his finding of guilt on the credible evidence presented during the hearing and made an objectively reasonable determination based on the evidence. Thus, the Court agrees with defendant Schoellkopf  that plaintiff has failed to meet his burden of demonstrating that defendant Schoellkopf  was so partial so as to violate plaintiff's due process rights.

### d.    Director Selsky

In a related claim, plaintiff avers that Director Selsky refused to reverse Schoellkopf's disposition against plaintiff and thus deprived plaintiff of his due process

rights. Dkt. #33, ¶ 40.  As stated earlier, there is nothing in the record to support the conclusion that Schoellkopf denied plaintiff his due process rights at the Tier III disciplinary hearing.  Selsky's decision affirming (and later modifying) the hearing officer's determination does not, standing alone, establish a federal constitutional violation. *See Eleby v. Selsky*, 682 F.Supp.2d 289, 293 (W.D.N.Y. 2010) ("Thus, plaintiff cannot show that his constitutional rights were violated during the disciplinary proceedings or hearing. Selsky's affirmance of the hearing officer's decision therefore cannot give rise to a § 1983 claim.") (citing *Loving v. Selsky*, No. 07-CV-6393, 2009 WL 87452, at *4 (W.D.N.Y. Jan. 12, 2009)); *see also Chavis v. vonHagn*, No. 02-CV-0119(Sr), 2009 WL 236060, *6, (W.D.N.Y. Jan. 30, 2009) (citing *Hameed v. Mann*, 57 F.3d 217, 224 (2d Cir.1995) (Selsky entitled to dismissal of claims where plaintiff failed to establish constitutional violations at disciplinary hearing)). Accordingly, plaintiff's claim against Selsky is dismissed.

With respect to plaintiff's third cause of action, defendants' motion for summary judgment is granted.

### 4. Fourth Cause of Action: Due Process--Property and Recreation

### a. Deprivation of Recreation

Plaintiff contends that a one-day denial of recreation denied him his right to due process. Dkt. #6, ¶ 61.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that the failure to comply with every state or prison regulation does not necessarily create a protected liberty interest for prisoners. *Sandin*, 515 U.S. at 483-484. Instead, to create a protected liberty interest, a state must implement a regulation or other provision

providing for restraints that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

At the outset, plaintiff acknowledges that he was unable to go to recreation because the incident of August 9, 2004 occurred during the scheduled time for recreation. Dkt. #48, ¶ 49; *Id.* at Ex. 2, Line 19. Similarly, defendants Callens and Czarnecki state that they did not deny plaintiff recreation on August 9, 2004 to punish him. Rather, if plaintiff was unable to go to recreation that day, it "may have been because of the use of force incident that occurred and the necessary procedures that had to be followed." Dkt. #32, ¶ 49.

In any event, a one-day deprivation of recreation is insufficient to give rise to a "significant hardship" as contemplated by *Sandin*. *See Husbands v. McClellan*, 990 F.Supp.214, 217 (W.D.N.Y. 1998) ("The temporary loss of the various privileges alleged in this case- i.e., telephone, package, commissary, and recreation privileges-does not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on an inmate."); *Ford v. Phillips*, No. 05 CIV. 6646, 2007 WL 946703, at * 10 (S.D.N.Y. Mar. 27, 2007) (granting summary judgment on inmate's claim that he was denied recreation, showers, and a special meal on four occasions; "These minor and temporary denials clearly do not constitute significant hardships implicating a constitutionally protected liberty interest"); *Ragland v. Crawford*, No. 95 Civ. 10069 , 1997 WL 53279, *3 (S.D.N.Y.,Feb. 7, 1997), ("In light of the Court's holding in *Sandin*, neither Ragland's loss of one hour daily recreation time for one week, nor his alleged confinement to keeplock on October 13, 1995, constitutes an atypical, significant hardship implicating a protected liberty interest."). Consequently, plaintiff has

failed to allege any facts that his deprivation of one day of recreation resulted in an "atypical" or "significant hardship."

## b.    Deprivation of Property

Next, plaintiff alleges that Callens and Czarnecki, withheld his personal properly from August 2 to August 9, 2004. Dkt. #6, ¶ 61. Although plaintiff arrived at Wende on August 2, his property did not arrive until August 14, 2004 for reasons unbeknownst to defendants. Plaintiff's property was issued to him the same day it was received. Dkt. #48, ¶¶ 46, 48. Defendants Callens and Czarnecki argue that they had no involvement with the delay in petiitoner's property arriving at Wende. Dkt. #33 at 4.

Plaintiff has pointed to no evidence, or even provided a factual allegation, to support a conclusion that Callens or Czarnecki had any involvement with the delay in the receipt of plaintiff's property. Absent evidence of personal involvement by any of the relevant *Colon* methods,  (e.g. direct involvement, deliberate indifference), plaintiff cannot prevail against the defendants. *See Colon*, 58 F.3d at 873.

## c.    Supervisory Liability

Plaintiff next contends that Sgt. Lambert failed to properly supervise Callens and Czarnecki with respect to the delivery of his personal property and the alleged denial of recreation time. Dkt. #6, ¶ 62. This conclusory allegation is insufficient to establish personal involvement. *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (to hold a prison official liable under  § 1983 "requires a showing of more than the linkage in the prison chain of command"); *Sash v. United States*, 674 F.Supp.2d 531, 543 (S.D.N.Y.2009) (holding that "[i]t is not enough to show that a defendant 'ultimately supervised those who allegedly violated plaintiff's Constitutional rights.'" (quoting *Mallard*

*v. Menifee*, No. 99 Civ. 0923, 2000 WL 557262, at *3 (S.D.N.Y. May 8, 2000)).  Plaintiff fails to establish personal involvement under the *Colon* factors, especially in light of the undisputed fact that the defendants he allegedly failed to supervise had no knowledge of the delay in the arrival of plaintiff's property from Upstate to Wende, and did not deny him recreation time.

For the foregoing reasons, defendants' motion for summary insofar as it relates to plaintiff's fourth cause of action is granted.

## IV.    Conclusion

For the reasons set forth above, the defendants' motion for summary judgment should be granted, except insofar as plaintiff claims that defendants Callens and Czarnecki used excessive force against him in violation of the Eighth Amendment. A telephone conference is scheduled for November 12, 2010 at 10:00a.m. for purposes of setting a trial date on plaintiff's first cause of action against defendants Callens and Czarnecki alleging excessive use of force.  Defendants' counsel shall arrange for plaintiff's telephonic appearance and provide the court with a telephone number where he can be contacted. The court will initiate the call.

**SO ORDERED.**

**s/ H. Kenneth Schroeder, Jr.**
H. KENNETH SCHROEDER, JR.
United States Magistrate Judge

Dated:       October 29, 2010
             Buffalo, New York